AUSA Catherine Lemery 313.226.9769
Special Agent Kristopher Mead 313.475.7903

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the

### Eastern District of Michigan

United States of America

v.

Yakubu BUKARI

Case:2:12-mj-30736
Judge: Unassigned,
Filed: 12-04-2012 At 11:19 AM
CMP USA V BUKARI (LCB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ December 3rd, 2012 _____ in the county of _____ Wayne _____ in the
_____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(2)(B)(ii) 18 USC 1001(a)(2) | Knowing that an alien had not received prior authorization to enter the United States, attempted to bring such alien (Tito Aubonotie Brown) to the United States for the purpose of private financial gain, and knowingly and willfully made false statements on Decembger 3rd, 2012. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kristopher A. Mead, CBP Enforcement Officer
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _December 4th, 2012_____

City and state: _Detroit, Michigan_____

_____
*Judge's signature*

Mona K. Majzoub
U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHGAN

IN RE:  BUKARI, Yakubu

## AFFIDAVIT

The affiant being duly deposed and sworn states:

1. I, Kristopher A. Mead, am an Enforcement Officer with the Department of Homeland Security, Customs and Border Protection, and have been employed with the same for over nine years. During my career as a law enforcement officer, I have been involved in various investigations and arrests concerning the smuggling of aliens and I have received training in this area. This affidavit is submitted in support of a finding of probable cause and is a summary of information known to law enforcement personnel, other civilian witnesses, and me from personal knowledge.

2. On December 3rd, 2012 at approximately 1016 hours, at the Detroit Fort Street Cargo Facility, Detroit, Michigan, Customs and Border Protection Officers (CBPO) had encountered a truck bearing Ontario tag 'PY5998', which was driven by Yakubu BUKARI, a native of Ghana and citizen of Canada born on September 26th, 1952. BUKARI presented Canadian passport #QE200252 to CBPO Kolbus, who was manning lane #8. CBPO Kolbus referred the truck and BUKARI for an x-ray examination of truck contents. At the x-ray, CBPO Van Cleave asked BUKARI if there were any other people or animals in the truck, to which BUKARI stated he had empty racks and no one else was in there. BUKARI waited in a separate room while the truck was x-rayed, which revealed an anomaly in the cab behind the front seats. CBPO Van Cleave checked the cab, which revealed a human male hidden underneath a blanket. CBPO Van Cleave commanded the individual, who was later identified as Tito Aubonotie BROWN, to exit the vehicle. BUKARI and BROWN were both secured for officer safety and escorted to the secondary office. The individual that was smuggled had in his possession Saint Lucia passport #R042410 that bears the name "Tito

AUBONOTIE" born June 21st, 1976 in Guyana. Also in his possession were three local Saint Lucia documents bearing the same biographical information. On BUKARI's possession were twenty $100 Canadian bills.

3. A query of AUBONOTIE's biometrics in the Integrated Automated Fingerprint Identification System (IAFIS) revealed a positive match to Federal Bureau of Investigation (FBI) #652182AB6, which reveals Alien number (A-file) 042 975 529. This A-file, when queried in the Central Index System (CIS) and the Enforcement Alien Removal Module (EARM), reveals the name of Tito Aubonotie BROWN of having been deported on March 11th, 1999, August 7th, 2006, and January 28th, 2010 all from Miami, Florida to Guyana. BROWN has been found inadmissible into the United States forever, since he has been convicted of a crime designated as an aggravated felony.

4. At 1302 hours in a private interview room at the Detroit Fort Street Cargo Facility, I read BROWN his Miranda rights, which was witnessed by SCBPO Brandon Welch. BROWN acknowledged his rights and chose to speak without an attorney present. BROWN stated that he had never been to the United States before nor has he applied for a visa. BROWN stated that he does not have any documentation that would allow him to come to or be physically present in the United States. BROWN stated that he has never been encountered by U.S. Immigration or any law enforcement entity in his life. During a half hour of questioning, BROWN never stated what other names he is known as. BROWN stated that he and BUKARI's families are close and that is how he knows him, but BROWN said he only knows BUKARI as "Bill". BROWN stated that BUKARI picked him up in Toronto and was bringing him to the United States for a two-day visit to Detroit to visit a friend. BROWN stated that BUKARI would pick him up and take him back to Canada in two days. At 1445 hours BROWN was interviewed again by CBPOE Mead and SCBPO Welch and he stated that he did lie about his criminal history and previous immigration encounters, but that he was still only coming to Detroit for two days.

5. At 1342 hours in a private interview room at the Detroit Fort Street Cargo Facility, I read BUKARI his Miranda rights, which was witnessed by SCBPO Brandon Welch. BUKARI acknowledged his rights and chose to speak without an attorney present. BUKARI stated that a friend "Mohamed" called him two days ago to bring a "brother" to the United States and that he would give BUKARI $2000 Canadian to help. "Mohamed" told BUKARI that this "brother" has a passport. BUKARI stated that he picked up BROWN at a Tim Horton's in Windsor, which is when "Mohamed" gave BUKARI the twenty $100 Canadian bills. BUKARI stated that he does not know BROWN's name, but they talked in the truck. BUKARI stated BROWN told him that he doesn't have a visa and that he has people in New York. BUKARI was supposed to bring BROWN to Toledo, Ohio and drop him off at the Pilot Truck Stop. BUKARI admitted that he was paid $2000 Canadian dollars to bring BROWN into the United States and that he messed up.

6. Therefore, based upon the aforementioned facts, I have probable cause to believe the defendant, Yakubu BUKARI, has attempted to smuggle an alien into the United States for financial gain, in violation of Title 8 United States Code, Section 1324(a)(2)(B)(ii), and knowingly and willfully made a false, in violation of Title 18 United States Code, Section 18 USC 1001(a)(2).

Kristopher A. Mead, Enforcement Officer
U.S. Customs and Border Protection

Subscribed and sworn before me
This 4th day of December 2012

United States Magistrate Judge